IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

DANIEL WARD WILLIAMS,

    Petitioner,

v.

DON MILLS,

    Respondent.

Civil No. 09-532-CL

REPORT AND RECOMMENDATION

CLARKE, Magistrate Judge.

    Petitioner is in the custody of the Oregon Department of Corrections pursuant to the Amended Judgment dated December 12, 2002 from Linn County Circuit Court Case No. 02030586. (Respondent's Ex. #101 p. 1.) Following a bench trial, Petitioner was convicted on one count of Sexual Abuse in the First Degree, one count of Rape in the Second Degree, and one count of Rape in the Third Degree. (Respondent's Exhibit #101 p. 1.) The court imposed three prison sentences, to be served consecutively: 75 months of incarceration

1 - REPORT AND RECOMMENDATION

for the count of Sexual Abuse, 75 months for the count of Rape in the Second Degree, and 14 months for Rape in the Third Degree. (Respondent's Ex. #101 p. 1.)

The Oregon Court of Appeals affirmed with written opinion (Respondent's Ex. #108 p. 1), and the Oregon Supreme Court denied Petitioner's petition for review (Respondent's Ex. #110 p. 1). Petitioner filed a petition for post-conviction relief but the Umatilla County Circuit Court denied relief (Respondent's Ex. #122 p. 1), the Oregon Court of Appeals affirmed without opinion, Williams v. Mills, 200 P.3d 641 (2008), and the Oregon Supreme Court denied review (Respondent's Ex. # 126 p. 1).

Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 alleging the following grounds for relief:

> **Ground One:** The trial court erred when it denied defendant's motion to dismiss based on pre-indictment delay.
> **Supporting Facts:** Defendant filed a motion to dismiss for pre-indictment delay and a memorandum of law in support of that motion. At the September 18, 2002, hearing on the motion to dismiss, defendant argued that the pre-indictment delay substantially prejudiced defendant's "ability to defend himself," and that "this delay . . . was a result of the state's attempt to get a tactical advantage"— waiting for defendant's conviction in North Dakota to impede defendant from Testifying.
>
> **Ground Two:** The trial court erred when it overruled defendant's hearsay objection and admitted state's exhibit 2.
> **Supporting Facts:** During the victim's direct testimony, the state produced a typed statement identified as state's exhibit 2. (P. Tr. 161). The victim typed the statement four days prior to trial and brought it to the DA (P. Tr. 160-61). The typed statement included a detailed summary of the allegations against defendant. The victim voluntarily prepared the statement in California, four years after the alleged incident (P. Tr. 159-60)[.] When the state offered the exhibit, defendant objected.
>
> **Ground Three:** The court below erred when if found that petition[er] was not denied his rights in the underlying proceedings and denied his claim for post-conviction relief.

2 - REPORT AND RECOMMENDATION

> **Supporting Facts:** The PCR court erred when it denied the amended petition for PCR. 1. Trial counsel [David Delsman] failed to call two witnesses each of whom possessed information critical to the primary issue at trial, the credibility of the alleged victim. Petitioner submitted exhibits (petitioner's ex. 1 and 2) and evidence concerning these witnesses before the post-conviction court. It is more probable than not that had these witnesses been called to testify at petitioner's trial, the result of the proceedings would have been different.

(Petition #2 pp. 6-9.)

Respondent moves to deny petitioner's claims and dismiss this proceeding on the grounds that petitioner procedurally defaulted his claims. Respondent further argues that "insofar as petitioner's claims were presented to the Oregon courts as federal claims, relief on them was denied in decisions that were neither 'contrary to' nor 'unreasonable applications of,'" United States Supreme Court precedent," and that petitioner's claims are without merit. Response to Petition (#16) p. 2.

Under section 2254(a), federal courts may consider petitions for writs of habeas corpus by state prisoners "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a). Federal habeas courts will not correct errors of state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991) (internal citation omitted).

In addition, an application for a writ of habeas corpus "shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the State," or "there is an absence of available State corrective process," or "circumstances exist that render such [state] process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). Here, the issue is whether Petitioner has exhausted the remedies available in the Oregon state

3 - REPORT AND RECOMMENDATION

courts, because Petitioner does not argue that there is an absence of available state corrective process or that state process was ineffective to protect his rights.

To achieve exhaustion, Petitioner must give state courts a "full and fair opportunity to address and resolve [his federal] claim on the merits." Keeney v. Tomayo-Reyes, 504 U.S. 1, 10 (1992), overruled by statute on other grounds as stated in Evans v. Thompson, 465 F. Supp. 2d 62, 83 (D. Mass. 2006). The exhaustion requirement "is not satisfied by the mere statement of a federal claim in state court." Id.

To "fairly present" a federal claim to a state court, a petitioner must satisfy several requirements. First, the petitioner must "include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle petitioner to relief." Gray v. Netherland, 518 U.S. 152, 162-63 (1996). A petitioner must provide "the factual and legal basis for his claim, Scott v. Schrero, 567 F.3d 573, 582 (9th Cir. 2009). Second, he must do so within the four corners of his petition or brief. See Baldwin v. Reese, 541 U.S. 27, 32 (2004). Ordinarily, a state prisoner fails to "fairly present" a claim to a state court "if that court must read beyond a petition or brief (or similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Id.; accord Castillo v. McFadden, 399 F.3d 993, 1000 (9th Cir. 2005) (holding that "[t]o exhaust his claim, [a petitioner] must have presented his federal, constitutional issue before the [state appellate courts] within the four corners of his appellate briefing"). "The mere similarity between a claim of state and federal error is insufficient to establish exhaustion." Vang v. Nevada, 329 F.3d 1069, 1075 (9th Cir. 2003) (internal citation omitted).

4 - REPORT AND RECOMMENDATION

If a petitioner can present a claim to the state's highest court, he must do so in order to achieve exhaustion of state remedies. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). However, if a petitioner failed to present his federal claims to the state's highest court but the state's procedural requirements now bar him from doing so, that claim is procedurally defaulted and is considered to be "exhausted" for the purposes of exhaustion analysis. See Gray v. Netherland, 518 U.S. 152, 161 (1996) (internal citations omitted).

Once a petitioner's claim is procedurally defaulted, a federal habeas court will not consider that claim unless the petitioner 1) "demonstrate[s] cause for his state-court default of any federal claim, and prejudice therefrom," or 2) "demonstrate[s] a sufficient probability that [the federal habeas court's] failure to review his federal claim will result in a fundamental miscarriage of justice." Edwards v. Carpenter, 529 U.S. 446, 451 (internal citations omitted). There is cause for a procedural default generally only if petitioners "show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n.24 (1999). Accordingly, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 486 (1986), superseded by statute on other grounds as stated in Antonelli v. United States, 1997 U.S. App. LEXIS 384 *5-6 (7th Cir.). Prejudice exists only if petitioners show that the procedural default "worked to [petitioner's] actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982). To establish the fundamental miscarriage of justice exception to the exhaustion requirement, petitioner must show actual innocence. Dretke v. Haley, 541 U.S. 386, 388

(2004).

In Ground One of his petition to this court, Petitioner alleges that the trial court erred in denying his motion to dismiss for pre-indictment delay. This court liberally construes Petitioner's claim in Ground One as a federal claim of Fourteenth Amendment Due Process violation.[1]

Petitioner "fairly presented" his federal constitutional claim of pre-indictment delay to the Oregon Court of Appeals on direct review. (See Respondent's Ex. #104 pp. 8-16.) However, Petitioner did not fairly present his pre-indictment delay claim to the Oregon Supreme Court in his petition for review. (See Respondent's Ex. #109 pp. 3-4.) Petitioner failed to do so because he failed to explicitly reference a federal law or constitutional provision that had been violated and failed to provide a factual and legal basis for his claim. See Scott, 567 F.3d at 582 (holding that "full and fair" presentation of a claim to a state court for habeas exhaustion purposes requires a petitioner to provide "the factual and legal basis for his claim," and "the substance of his claim . . . , including a reference to a federal constitutional guarantee"); Fields v. Waddington, 401 F.3d 1018, 1021 (9th Cir. 2005) ("In order to alert the state court, a petitioner must make reference to provisions of the federal

---

[1] In his petition to this court, Petitioner does not assert violation of any specific federal law or part of the United States Constitution in support of his claim for Ground One. (Petition #2 p. 6.) However, on direct appeal from the judgment of the Circuit Court for Linn County to the Oregon Court of Appeals, Petitioner argued that the trial court's denial of his motion to dismiss for pre-indictment delay was a Fourteenth Amendment due process violation. ( See Respondent's Ex. #104 pp. 8-16.) This court agrees that a claim of pre-indictment delay essentially alleges a due process violation under the Fifth and Fourteenth Amendments of the United States Constitution. See United States v. Lovasco, 431 U.S. 783, 788-89; Aleman v. Judges of the Circuit Court, 138 F.3d 302, 309 (7th Cir. 1998); Dickerson v. Louisiana, 816 F.2d 220, 228 (5th Cir. 1987).

6 - REPORT AND RECOMMENDATION

Constitution or must cite either federal or state case law that engages in a federal constitutional analysis." (internal citation omitted)). Petitioner says nothing about the pre-indictment delay claim in that petition other than reporting that the court below affirmed the trial court's denial of defendant's motion to dismiss based on pre-indictment delay and asserting that "defendant advances all three issues [reviewed below]." (Respondent's Ex. #109 pp. 3-4.)

Petitioner's second claim is that "[t]he trial court erred when it overruled defendant's hearsay objection and admitted state's exhibit 2." (Petition #2 p. 7.) Petitioner does not allege that the claim alleged in Ground Two violated the federal Constitution, or any other federal law. As noted above, federal courts may intervene in state judicial processes only to correct wrongs of federal constitutional dimensions. Wainwright v. Goode, 464 U.S. 78, 83 (1983) (citing Engle v. Issac, 456 U.S. 107 (1982).

Therefore if Petitioner intends to rely on state law to support this claim, relief should be denied because this court lacks subject matter jurisdiction over state law claims. If petitioner intends to base this claim on federal law, the federal basis for his claim should be specifically alleged in his petition. See, Rule 2(c) of the Rules Governing Section 2254 Cases; Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994); see also, U.S. v. Barrett, 178 F.3d 34, 46 (1st Cir. 1999).

In addition, Petitioner failed to present his second claim as a federal claim in his brief and petition when he challenged this alleged error on direct review in the Oregon Court of Appeals and the Oregon Supreme Court. (See Respondent's Ex. #104 pp. 17-21; Respondent's Ex. #109 pp. 4-14.) On direct appeal to both courts, Petitioner referenced no

7 - REPORT AND RECOMMENDATION

federal constitutional guarantee, cited no U.S. Supreme Court case law or other federal authority to support an argument that there had been a violation of federal law. Petitioner relied extensively on the Oregon Code of Evidence to support his claim of the state trial court's alleged error in admitting hearsay. (See Respondent's Ex. #104 pp. 17-21; Respondent's Ex. #109 pp. 4-14.) Consequently, Petitioner failed to "fully and fairly" present this error as a federal claim to the state courts. See Baldwin, 541 U.S. at 32; Gray, 518 U.S. at 162-63; Scott, 567 F.3d at 582; Fields, 401 F.3d at 1021. Petitioner's petition for direct review by the Oregon Supreme Court argued that "the legal issue[(What is the proper standard for testing evidential harm in a bench trial?)] is an issue of state law." (Respondent's Ex. #109 p. 5.)

For his third claim, Petitioner alleges he received ineffective assistance of trial counsel. (Petition #2 p. 9.) Petitioner asserts, "Trial counsel failed to call two witnesses each of whom possessed information critical to the primary issue at trial, the credibility of the alleged victim." (Petition #2 p. 9.) The court construes this claim as a federal claim for violation of the Sixth and Fourteenth Amendments of the United States Constitution; Petitioner raised this claim in his post-conviction trial and in his post-conviction appeal. (See Respondent's Ex. #112 p. 2; Respondent's Ex. # 123 p. 9.)

However, Petitioner's third claim was not "fairly presented" to the Oregon Supreme Court (see Respondent's Ex. #125 p. 2) under Baldwin, 541 U.S. at 32, Gray, 518 U.S. at 162-63, Scott, 567 F.3d at 582, and Fields, 401 F.3d at 1021. In his petition for review by the Oregon Supreme Court, he did not cite a federal law or constitutional provision that had been violated or provide any factual or legal support for such a federal claim. (See

8 - REPORT AND RECOMMENDATION

Respondent's Ex. #125 p. 2.) Petitioner's petition for review by the Oregon Supreme Court stated, "Petitioner adopts the argument presented in the Appellant's Brief filed with the Court of Appeals." (Respondent's Ex. #125 p. 2.) This fails to "fairly present" a claim to a state court. See Baldwin, 541 U.S. at 32.

Petitioner's three claims are procedurally defaulted. See Gray v. Netherland, 518 U.S. 152, 161 (1996) (internal citations omitted). Petitioner cannot "fairly present" any additional claims to the Oregon courts because Petitioner is now barred under Oregon law from filing any additional appeals or PRC proceedings.[2]

Because Petitioner has not demonstrated that there was "cause" and "prejudice therefrom" for these procedural default and has not established the "fundamental miscarriage of justice" exception to the exhaustion requirement, this court should not review Petitioner's three claims. See Edwards, 529 U.S. at 451 (internal citations omitted); Dretke, 541 U.S. at 388.

Even if Petitioner's claims on Grounds One and Three were properly before this court, the state courts' denials of relief on these claims are entitled to deference. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) sets out a "highly deferential standard for evaluating state court rulings," which requires that state court decisions be given the benefit of the doubt. Woodford v. Visciotti, 537 U.S. 19 (2003) (per curiam), quoting Lindh v.

---

[2] ORS 138.071 requires that direct appeals be filed not later than 30 days after the judgment or order appealed from was entered in the register. ORS 138.650 requires PCR appeals to be filed within 30 days after entry of final judgment. ORS 2.520 requires petitions for review to Oregon's Supreme Court to be filed within 35 days from the date of the Court of Appeals' decision. ORS 138.550(3) provides that all PCR claims must be asserted in the original or amended petition unless they could not reasonably have been asserted therein, and any claims not so asserted are deemed waived.

9 - REPORT AND RECOMMENDATION

Murphey, 521 U.S. 320, 333 n. 7 (1997). This is true even if the state court did not fully articulate their reasoning. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (explaining that "federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of the controlling federal law").

Under the AEDPA, habeas corpus relief may "not be granted with respect to any claim that was adjudicated on the merits in state court proceedings," unless the adjudication:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has explained that in passing the AEDPA, Congress intended to change the habeas corpus field by curbing delays, preventing "re-trials" on federal habeas, and giving effect to state convictions to the extent permissible under the law. Williams v. Taylor, 529 U.S. 362, 404 (2000).

The "contrary to" and "unreasonable application" clauses of the deference requirements set forth in section 2244(d)(1) have independent meanings. Id. at 404-06. Under the "contrary to" clause, a federal court may grant relief only if the state court either (1) applied a rule that contradicts the governing law set forth in Supreme Court cases, or (2) confronted a set of facts that was materially indistinguishable from a Supreme Court decision but nonetheless arrived at a different result. Id. at 406. Under the "unreasonable application" clause, a federal court may grant relief only if the state court identified the correct governing

10 - REPORT AND RECOMMENDATION

principle from the Supreme Court but unreasonably applied that principle to the facts of the petitioner's case. Id. at 413.

To satisfy the "unreasonable application" clause of § 2244(d)(1) the "state court's application of clearly established law must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003). The state court decision must be "more than incorrect or erroneous." Id. It is not "an unreasonable application of clearly established Federal law" for a state court to decline to apply a specific legal rule that has not been squarely established by the United States Supreme Court. See Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

Finally, under 28 U.S.C. § 2254(e)(1), "Factual determinations by a state court are presumed to be correct absent clear and convincing evidence to the contrary." Miller-el v. Cockrell, 537 U.S. 322, 340 (2003).

Petitioner contends in Ground One that the trial court erred in denying his motion to dismiss for pre-indictment delay and that the delay substantially prejudiced his ability to defend himself and was caused by the state attempting to gain a tactical advantage. (Petition #2 p. 5.) Specifically, Petitioner alleges that the prosecution waited until he was convicted in another state to prevent him from testifying. (Petition #2 p. 6.)

To prevail on a claim of pre-indictment delay, Petitioner must show 1) the delay caused "substantial prejudice" to his "rights to a fair trial," and 2) "the delay was an intentional device to gain tactical advantage over the accused." United States v. Marion, 404 U.S. 307, 324 (1971). To make the claim "concrete and ripe for adjudication," Petitioner must prove "actual prejudice" for the first prong of a pre-indictment delay claim. Lovasco, 431 U.S. 783, 789-90 (1977).

11 - REPORT AND RECOMMENDATION

The state trial court denied Petitioner's motion to dismiss. The court concluded that the delay was not prejudicial, and that the State did not intend to use the delay to gain a tactical advantage.

> When we get to the prejudice point then that's specifically why I asked [petitioner's attorney] . . . are there witnesses or information that you've lost because of any delay whenever it happened, along this continuum of time, you know, is there any prejudice other than this fading memory argument that defendants always have available to them, and there really wasn't anything presented.
>
> . . . [W]aiting to see if somebody's convicted of a new crime . . . it's not the kind of tactical advantage that we're talking about. . . . Neither of [the parties] presented any argument on the federal cases about the meaning of tactical advantage, but I have to assume that it means the kind of tactical advantage, for example, if the State knew that a key witness had cancer and was dying and they waited until the key witness for the defense died of cancer. [That is] the kind of tactical advantage I think the cases are talking about, . . . an underhanded restricting the defendant from putting on a fair presentation . . . . [Petitioner's attorney] argued, well, gee, now his ability to testify at his trial has been hampered or at least prejudiced in some way because now he – if he testified this other conviction will come out. But that's because he went out and committed a new crime, it's not because of anything that the State caused or anything else. . . . So I'm denying the motion."

(Respondent's Ex. #103 pp. 67-69.)

The Court of Appeals' opinion focused on the "substantial prejudice" prong of <u>Marion</u> and found that under <u>Marion</u>, Petitioner had presented a "complete lack of evidence" in support of his claim that he was substantially prejudiced by pre-indictment delay. (Respondent's Ex. #108 pp. 8.)

> "[S]ubstantial prejudice" in this [case's] context is more than impaired memory of events, and more than anxiety about impending prosecution and trial. Furthermore, the existence of prejudice and its substantiality must be proved; it will not be assumed.

12 - REPORT AND RECOMMENDATION

> In this case, defendant asserts that the delay in indicting him substantially prejudiced him because the intervening conviction impaired his ability to testify without running the risk of impeachment. There is, however, *a complete lack of evidence* [emphasis added] to support defendant's assertion. There was no offer of proof at trial, no evidence that he, in fact, intended to testify, and perforce, no evidence as to precisely what he had intended to say. Even assuming for the sake of argument that he actually intended to testify, we remain unable to assess the extent to which the conviction in North Dakota likely would have impeached the relevant testimony that he intended to offer. Indeed, even assuming for the sake of argument that the mere existence of the North Dakota conviction would have reduced defendant's effectiveness as a witness on his own behalf, we remain unable on the record before us to determine whether that would have *substantially* [emphasis original] prejudiced his right to a fair trial. Marion, 404 U.S. at 324-25."

(Respondent's Ex. #108 pp. 7-8.)

The Oregon Court of Appeals concluded that it did not need to determine whether the state intentionally delayed indicting defendant after it found that Defendant had failed to prove the requisite prejudice. (Respondent's Ex. #108 p. 5.) As discussed above, Petitioner did not fairly present this federal claim to the Oregon Supreme Court (Respondent's Ex. #109 pp. 3-4), and the Oregon Supreme Court denied review on direct appeal (Respondent's Ex. #110 p. 1).

The above analysis of Petitioner's pre-indictment delay claim by the state trial court and court of appeals was consistent with federal law under Marion and Lovasco and was not objectively unreasonable. Additionally, Petitioner has not met his burden of demonstrating by clear and convincing evidence that the state court's factual determinations were incorrect. For these reasons, the state-court decisions that denied and affirmed denial of Petitioner's motion to dismiss for pre-indictment delay are entitled to deference under the AEDPA. See Musladin, 549 U.S. at 76-77; Miller-el, 537 U.S. at 340; Williams, 529 U.S. at 406, 413. In

13 - REPORT AND RECOMMENDATION

addition, this court finds the state-court decisions to be supported by the record and to be correct on the merits.

In Ground Three, Petitioner alleges that his trial counsel "failed to call two witnesses each of whom possessed information critical to the primary issue at trial, the credibility of the alleged victim." (Petition #2 p. 9.) Petitioner stated in deposition and at his PCR trial that he believes that these uncalled witnesses would have offered testimony that they did not believe that the victim was credible. (See Respondent's Ex. #123 pp. 5-7).

Under Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984), in order for Petitioner to prevail on a claim that his counsel's assistance was so defective as to require reversal, Petitioner must 1) show that "counsel's representation fell below an objective standard of reasonableness" and 2) show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." Id. at 694. When considering ineffective assistance of counsel claims under 28 U.S.C. § 2254(d), "it is the habeas applicant's burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner." Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam). The Post-Conviction Relief (PCR) court rejected Petitioner's claim after concluding that counsel's representation of Petitioner at trial was not objectively unreasonable. (Respondent's Ex. #121 pp. 15-16.) The PCR trial court concluded:

> There certainly were valid strategic reasons not to call these witnesses, including Wilson, and I think this Petitioner understood that and made the decision that they wouldn't call him. In addition, it appeared that

14 - REPORT AND RECOMMENDATION

> the trial Counsel had done a pretty good job in the cross-examination of the victim, and there was a reasonable chance, at least they thought, that the Court would discard, you know, what the victim said. But—but he was convicted, and I find that he did have adequate legal representation.
>
> I find there's been a failure of proof here, and the petition for post-conviction relief is denied . . . .

(Respondent's Ex. #121 pp. 15-16.)

The Oregon Appeals Court affirmed the PCR court's ruling without opinion, and the Oregon Supreme Court denied review.

The PCR trial court's findings are neither contrary to, nor an unreasonable application of the Strickland standard for ruling on an IAC claim. See Williams, 529 U.S. at 406, 413. The same is true of the Court of Appeals' affirmance without opinion on collateral review. Id. In addition, Petitioner has failed to rebut the PCR court's factual findings by clear and convincing evidence, as required by § 2254(e)(1). For these reasons, the state courts' rulings denying relief on Petitioner's ineffective assistance of counsel claim are entitled to deference.

The court agrees with the state courts that Trial Counsel Delsman's representation did not fall below an objectively reasonable level. Delsman's decision not to call the additional witnesses was made after he consulted with Petitioner and was part of a reasonable trial strategy; his failure to call Mr. Mangrum and Mr. Wilson as witnesses was not an instance of an attorney neglecting to consider or pursue witnesses. (See Respondent's Ex. #120 pp. 2-3.) In his affidavit, Mr. Delsman explained:

> As we prepared for trial I discussed potential witnesses and trial strategies with petitioner. . . . [P]etitioner proposed calling character witnesses. I discussed the dangers of putting character in issue, particularly with the probability that the North Dakota incident would then become relevant.

15 - REPORT AND RECOMMENDATION

. . .

> After the state rested [at trial], the Court took a break so I could confer with petitioner. We discussed the relative strength and weakness of [the victim's] testimony. I told petitioner that I had the witnesses he and I had discussed available at the courthouse to testify. We discussed the tactics related to putting on the witnesses we had available. In particular, we discussed whether putting on our relatively weak witnesses would detract from what had appeared to be a successful impeachment of [the victim]. After considering all of the tactical implications, petitioner decided we did not need to call any witnesses.

(Respondent's Ex. #120 pp. 2-3.)

The two witnesses that Petitioner contends should have been called, Wilson and Mangram, were both such character witnesses related to "the North Dakota incident" that counsel reasonably believed would be detrimental to Petitioner's case.

Petitioner's claim on Ground Three also fails to satisfy the second (prejudice) prong of Strickland because he has not presented any testimony, affidavits, or other declaratory evidence from Delsman or Mangram that indicated what they would have testified to at trial. A Petitioner fails to satisfy the second prong of Strickland, 466 U.S. at 687, if he offers no indication of what potential witnesses would have testified to or how their testimony might have changed the outcome of the hearing. See United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987). To show prejudice, it is not sufficient for Petitioner to speculate about the contents of uncalled witnesses' testimony; Petitioner must have presented at a minimum affidavits or other declaratory evidence from the uncalled witnesses detailing what those individuals would have testified to if they had been called at trial. See Morris v. California, 966 F.2d 448, 456 (9th Cir. 1992); Horn v. Hill, 180 Or. App. 139, 148-49 (2002) ("Where evidence omitted from a criminal trial is not produced in a post-conviction proceeding, . . .

16 - REPORT AND RECOMMENDATION

it's omission cannot be prejudicial."). In Morris, id., the court explained and held, "In order to establish an actual conflict of interest [to prevail on her IAC claim, Petitioner] would have had to introduce, at a minimum, an affidavit from her husband disclosing what he would have said at her trial had he testified. . . . Although her brief on appeal is heavy with speculation as to the contents of his unsolicited testimony, her wishful suggestions cannot substitute for declaratory or other evidence. . . .The district court was correct to reject her claim . . . ."

In addition, Petitioner has not presented any admissible evidence that Mangram and Wilson's testimony would have contained anything other than objectionable hearsay testimony about the statements of people Mangrum interviewed or objectionable commenting by Mangrum and Wilson on the credibility of other witnesses, including the victim. See State v. Middleton, 294 Or. 427, 438 (1983) ("We expressly hold that in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth. We reject testimony from a witness about the credibility of another witness, although we recognize some jurisdictions accept it.") Petitioner offered only speculation that Wilson and Mangrum's would have offered testimony about the credibility of the victim if they had testified.

Based on the foregoing, I find that petitioner failed to fairly present his claims in this proceeding to Oregon's highest court and has not established cause and prejudice for the procedural default or that he is entitled to the fundamental miscarriage of justice exception to the exhaustion requirement. To the extent that petitioner's claims were presented to Oregon courts, they were denied in decisions that are entitled to deference by this court and

17 - REPORT AND RECOMMENDATION

are correct on the merits. Petitioner's Petition (#2) should be denied. This proceeding should be dismissed.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

## Certificate of Appealability

*Should petitioner appeal, a certificate of appealability should be denied as petitioner has not made a substantial showing of the denial of a constitutional right. See, 28 U.S.C. § 2253(c)(2).*

DATED this 5 day of November, 2010.

_____

18 - REPORT AND RECOMMENDATION

                                    Mark D. Clark
                                    United States Magistrate Judge

19 - REPORT AND RECOMMENDATION